IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EDDIE RODRIGUEZ, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | No. 1:11-CV-00451-LY |
| | § | |
| RICK PERRY, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFFS' BRIEF ON PRELIMINARY ISSUES

As directed in paragraph 1 of the Court's June 24, 2011, Agreed Order Regarding

Preliminary Schedule, Plaintiffs submit the following brief on preliminary issues identified in the

June 24th order. Part I addresses the holdings in *Perry v. Del Rio*, 66 S.W.3d 239 (Tex. 2001), in

the context of the current situation in Texas congressional redistricting. Part II addresses the

applicability of *Perry v. Del Rio* if the Texas Legislature passes a congressional redistricting

plan, and the Governor either signs the bill or allows it to become law without his signature. Part

III addresses the role of the presiding judge in a case requiring a three-judge court.

**I.   BACKGROUND TO *PERRY V. DEL RIO* AND STATUS OF CONGRESSIONAL REDISTRICTING
LITIGATION**

**A.   Status of Texas congressional redistricting**

The regular session of the 82nd Texas Legislature—the first legislative session following

release of the 2010 federal decennial census and the reapportionment of congressional seats

under 2 U.S.C. § 2a(a)—the legislature adjourned *sine die* on May 30, 2011, having failed to

pass a congressional redistricting plan.

In its first special session, the legislature passed a plan—Senate Bill 4, enacting Plan

C185—but the bill still awaits gubernatorial action. Even if it becomes law under state rules, the

state cannot take any steps to implement it until and unless the legislation receives preclearance under Section 5 of the Voting Rights Act of 1965, as amended.  42 U.S.C. § 1973c; *see Clark v. Roemer*, 500 U.S. 646, 652 (1991) ("voting change in a covered jurisdiction 'not . . . effective as la[w] until and unless'" pre-cleared under Section 5). Thus, under governing law, even if the Governor acts favorably on Plan C185, it will not become operative law—at best—until around September 1st or even later.[1]

## B.   The two basic rules of *Perry v. Del Rio*

*Perry v. Del Rio* established two important rules for congressional redistricting litigation in Texas—one on ripeness, the other on dominant jurisdiction.

### 1. Ripeness

First, the Texas Supreme Court held that "constitutional challenges to congressional districting" are ripe "at the end of the regular session, *but not before*." 66 S.W.3d at 255 (emphasis added). The court explained that it was establishing the legislature's *sine die* adjournment from the first regular session following release of the federal decennial census as a "bright-line rule," authorizing at that point commencement and prosecution of legal proceedings "even if legislative action remains a possibility." *Id*. at 256.  The court adopted this rule to address two competing concerns: first, to ensure the legislature had "its full regular session to discharge its redistricting responsibility"; and second, to ensure "a reasonable opportunity remained for fully litigating redistricting issues" if the legislature failed to do so.  *Id.* at 255.  As the court explained, the constitutional claims being asserted as to congressional districts in Texas were "not . . . contingent" on the Governor's determination whether to convene a special session

---

[1] All dates are in 2011 unless otherwise specified.

2

on the topic. *Id*. at 257.  The court recognized that even though "it is quite possible that the Legislature will adopt a redistricting plan afterward in special session, … to preclude commencement of judicial proceedings any longer and still allow for trial, appeals, preclearance under the Voting Rights Act, and federal court proceedings, presents an unjustifiable risk of disruption to the election cycle."  *Id.* at 256.

### 2.   Dominant jurisdiction

Second, the *Del Rio* court held that dominant jurisdiction "cannot be conferred . . . by the filing of a claim . . . unless the claim was ripe *when the filing was made*." *Id*. at 253 (emphasis added). The court then applied this rule in light of its ripeness ruling and concluded that the trial court with dominant jurisdiction was the one in which a claim challenging congressional redistricting was first filed after *sine die* adjournment. *Id*. at 257-58. The other trial courts in which the same or similar claims were pending were required to stand aside. *Id*.

### C.   First-filed ripe challenge under *Perry v. Del Rio* in 2011 congressional redistricting

Challenges to Texas congressional redistricting are pending in four federal district court forums:

- ■  *Rodriguez*—this case—in the Austin Division of the Western District of Texas;[2]

- ■  *Teuber*, in the Sherman Division of the Eastern District of Texas;[3]

- ■  *Perez/MALC (Mexican American Legislative Caucus)/Texas Latino Redistricting Task Force*, in the San Antonio Division of the Western District of Texas;[4] and

[2] No. 1:11-CV-00451-LY. *Rodriguez* involves only a congressional redistricting challenge.

[3] No. 4:11-CV-00059-RS. *Teuber* involves challenges to congressional, state senate, state house, and state board of education districting.

[4] Nos. 5:11-CV-0360-OLG-JES-XR, 5:11-CV-0361- OLG-JES-XR, & 5:11-CV-0490, respectively. The *Perez* cases involve challenges to congressional, state house, state board of education, and railroad commission districts.

3

■   *MALC*, in the McAllen Division of the Southern District of Texas.[5]

*Rodriguez* was filed on May 30th,[6] hours after the legislature adjourned *sine die*. *Teuber* was filed February 10th. *Perez* and *MALC* were filed May 9th. *TLRTF* was filed June 17th. *Teuber*'s first amended complaint after *sine die* adjournment was filed June 22nd.[7] *Perez* and *MALC*'s first amended complaints after *sine die* adjournment were filed May 31st, after *Rodriguez* was filed.[8] As such, *Rodriguez* was the first of these cases to be filed after the legislature's *sine die* adjournment.

Thus, under the legal rules laid down in *Perry v. Del Rio*, the *Rodriguez* case is the first-filed ripe challenge to congressional redistricting,[9] making this Court the forum in which congressional redistricting challenge should go forward.

## II.   APPLICABILITY OF *PERRY V. DEL RIO*'S PRINCIPLES

### A.   *Perry v. Del Rio*'s ripeness rule applies in the event a congressional redistricting plan is duly enacted.

*Perry v. Del Rio* did not condition its ripeness ruling on what the legislature and Governor might do concerning congressional redistricting after adjournment of the first post-census regular

---

[5] No. 7:11-CV-00144-RC. *MALC* was removed from state district court in Hidalgo County. The original petition in state court was filed on April 5th, and the state removed the case on May 13th. The plaintiff has moved to remand it because it alleges no federal claims. This case will not be discussed further in the brief.

[6] All of the referenced dates are taken from the docket sheets for the cases.

[7] The plaintiffs filed a motion for leave to file an amended complaint on June 2nd; however, the motion was not granted until June 22nd.

[8] *Perez*'s amended complaint added a congressional challenge for the first time. *MALC* revised its congressional challenge to include the legislature's failure to enact a plan during regular session.

[9] All of the challenges filed before *sine die* adjournment are variants of one-person, one vote challenges. *Teuber* challenged the inclusion of non-citizens in the equal population equation. *Perez* challenged counting prisoners where they are incarcerated rather than where they resided before incarceration. *MALC* challenged the Census's undercount of Latinos. All of these go to the equal population requirement, and none was ripe when filed under the *Del Rio v. Perry* ripeness rule.

session. In fact, it did the opposite. It said that the ripeness rule is not contingent on what the legislature might do later. Stated another way, *Perry v. Del Rio*'s ripeness ruling establishes the test for when a trial court may assert jurisdiction over a challenge to the Texas Legislature's exercise of its duties concerning congressional redistricting following issuance of the decennial census. If the legislature fails to take action, the challenge takes the form of a one person, one vote constitutional challenge by those in overpopulated districts under the unchanged plan. The core point is that the court in which the challenge is filed is one in which a congressional redistricting challenges may be asserted.

If events subsequent to the jurisdictionally-appropriate filing of the lawsuit are such that the legislature does act and a congressional redistricting plan is duly enacted, then the plaintiffs may amend their complaint to challenge the newly-enacted statute concerning congressional redistricting—and they may do so without engaging in a race to the courthouse.[10] Under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, such an amended complaint would relate back to the date of the original complaint (May 30th) because the claim would arise from the same core conduct giving rise to the ripened claims asserted in the original complaint. That is, while new legal claims may be asserted in the amended complaint, they arise from the Texas Legislature's actions with regard to post-decennial census redistricting of Texas congressional seats.

The relation back rule of Rule 15(c) looks to whether, even when the claims asserted against a defendant (or set of defendants, as here) are revised to take into account a different aspect of the defendants' conduct, "the same general conduct, transaction and occurrence" are involved.

---

[10] Paragraph 3 of the Court's June 24th order authorizes the plaintiffs to file such an amended complaint.

*Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574, 581 (1945). If that same general conduct is alleged to have harmed the plaintiff, even in different ways, the amended pleading relates back to the original pleading. *Id*. When, as here, the original complaint and the amended complaint derive from the same "nexus of facts and actions," the liberal pleading and relation back rules of Rule 15(c) authorize the amended complaint to be tied to the original complaint. *Hall v. Spencer County*, 583 F.3d 930, 934 (6th Cir. 2009).

The relation back doctrine, however, has an additional restriction. The court must have jurisdiction over the original complaint to which the amended complaint relates back. *Davis v. Heckler*, 748 F.2d 291, 293 (5th Cir. 1984). If the amended complaint relates back to a complaint over which the court lacks jurisdiction, the court lacks jurisdiction over the amended complaint, too. *Id*. Here, of course, any amended complaint necessitated by passage of a congressional redistricting plan would relate back to the post-*sine die* adjournment original complaint of the plaintiffs filed on May 30th. Therefore, the Court would retain jurisdiction over the claims asserted in the new complaint.

So, in partial answer to the question posed by the Court:  (1) the *Perry v. Del Rio* ripeness test applies to this case; (2) under the *Perry v. Del Rio* ripeness test, this case is the first filed case; and (3) this case will remain the first filed ripe case if a congressional redistricting plan (such as Plan C185) becomes law.

**B.   The ripeness and dominant jurisdiction principles of *Perry v. Del Rio* apply.**

Both the ripeness and the dominant jurisdiction rules in *Perry v. Del Rio* were decided in the context of state law. Federal law, however, mirrors state law in both situations. Thus, to complete the answer to sub-part (1) of paragraph 1 of the Court's June 24th order, *Perry v. Del Rio* applies

6

here, both because the opinion's bright line ripeness rule constitutes state substantive law as to the accrual of justiciable injury,[11] and because federal law on ripeness and dominant jurisdiction principles is the functional equivalent as the state law discussed and applied in *Perry v. Del Rio*.

### 1.  Ripeness

The court in *Perry v. Del Rio* was careful to state that, while it was determining the ripeness issue "by state law," it could only do so by not defeating the obligation of state courts to provide a remedy for federal wrongs.  66 S.W.3d at 249. The court then explained: "[W]e see no difference between our law and federal law." *Id*. Indeed, the entire analysis of the ripeness issue in the post-census congressional redistricting context essentially relies on federal justiciability principles and authority.[12]

There is no reason to think that federal courts should or would reject the *Perry v. Del Rio* analysis and establish a different ripeness rule in this situation. In the federal *Balderas* litigation in 2001,[13] the district court entered an order on July 23, 2001—nearly two months *before* the *Perry v. Del Rio* decision issued—which discussed ripeness issues and noted that cases became ripe when the regular session adjourned and the Governor disclaimed any intent to call a special session. *Balderas* July 23rd order at 4. However, the *Balderas* court did not conclude that elimination of the possibility of a special session was a necessary precondition to ripeness. It only noted the status of such a possibility in commenting on the fact that the case before it was ripe.

---

[11] *Perry v. Del Rio*, 66 S.W.3d at 249-51.
[12] The sole dissenter in *Perry v. Del Rio* criticizes the majority on this very point, complaining that, while state law should determine the jurisdictional issues, the majority nonetheless "applies federal law[.]" 66 S.W.3d at 264 ("Court applies federal ripeness analysis").
[13] *See Balderas v. Texas*, No. 6:01cv158 (E.D. Tex.) (3-judge court).

7

The later, more fully briefed and more fully developed decision in *Perry v. Del Rio* provides the only complete analysis of the point at issue here. It does not dictate what this Court should do, but it provides strong authority and a careful exegesis of federal ripeness principles. In substance, its ripeness rule is the federal ripeness rule.

### 2.    Dominant jurisdiction

As with ripeness, the dominant jurisdiction ruling in *Perry v. Del Rio* is technically grounded in state law. Unlike the analysis of ripeness, however, the analysis of the dominant jurisdiction issue rests on state law authority, not federal case law and principles. *See* 66 S.W.3d at 252-53. Hence, it does not dictate the result in this Court of what the Texas courts term the dominant jurisdiction issue.

But, federal law is to the same effect as Texas law on this point. It is discussed in terms of the "first-filed" rule.

As a general principle of comity, federal district courts are supposed to exercise care to avoid interfering with each other's affairs. *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952). When largely the same claims and issues are raised at the same time in different federal district courts, the federal courts have used the "first-filed" rule to make the accommodations required by the *Kerotest* principle.

In the Fifth Circuit, the rule is that the court with "*prior jurisdiction* over the common subject matter" should resolve all issues presented in related actions. *Mann Mftg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) (emphasis added);[14] *see also West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast District of the ILA*, 751 F.2d 721, 730 (5th

---

[14] *Mann* also states the first-filed principle this way: "In the absence of compelling circumstances, the court initially *seized of a controversy* should be the one to decide whether it will try the case." 439 F.2d at 407 (emphasis added).

Cir. 1985). This comity principle applies both intra- and inter-district. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 n.28 (5th Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993). As these and other cases demonstrate, the "first-filed" rule includes a jurisdictional condition concerning the first-filed case: it is the first case in which jurisdiction attaches, not simply the first case filed, that matters.[15] *See Orthmann v. Apple River Campground*, 765 F.2d 119, 121 (8th Cir. 1985) ("first court *in which jurisdiction attaches* has priority to consider the case") (emphasis added); *Pacesetter Systems, Inc. v. Medtronic, Inc.*. 678 F.2d 93, 95 (9th Cir. 1982) ("court which *first acquired jurisdiction* should try the lawsuit") (emphasis added).

The first-filed rule is not a hard-and-fast rule. It creates a presumption, not an ironclad legal prohibition. *See, e.g., Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 552 F.3d 271, 275 (2d Cir. 2008).[16] Exceptions to the rule apply if, for example, the first-filed case reveals "anticipatory conduct" to gain an advantage. 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3854, at 275 (2007).

Thus far, research has uncovered only one reported decision in which the first-filed rule was addressed in the congressional redistricting context. In *Barnett v. Alabama*, 171 F. Supp.2d 1292 (S.D. Ala. 2001) (3-judge court), a divided court (2-1) decided not to apply the first-filed rule and transferred a redistricting case to another district court. 171 F. Supp.2d at 1296-97. It gave two primary reasons for this action: (i) the state capital forum was the more appropriate forum; and (ii) a three-judge court had been appointed first in the state capitol forum case. *Id*. at 1295-96.

---

[15] The date of filing, not the date of service, is the crucial date. *See, e.g., Allstate Ins. Co. v. Clohessy*, 9 F.Supp.2d 1314, 1316 (M.D. Fla. 1998).

[16] In the Fifth Circuit, it is not clear whether application of the first-filed rule is a matter of sound trial court discretion or some more restrictive requirement. *West Gulf Maritime*, 751 F.2d at 729 n.2.

*Barnett* is of uncertain application in the context of the current Texas congressional redistricting litigation. *Rodriguez* is the first-filed case under the governing rule. Its forum is the capital of Texas. The courts in *Perez* and *MALC* acquired jurisdiction after this court acquired jurisidiction in *Rodriguez*; however, a three-judge court has been designated in San Antonio, but not here.

The better view is that the three-judge court element of the *Barnett* analysis should not be a factor in deciding how to apply the first-filed rule. The duty of the chief judge of the circuit under 28 U.S.C. § 2284 with regard to appointing the other two members of a three-judge court is "solely ministerial." *Merced Rosa v. Herrero*, 423 F.2d 591, 593 (1st Cir. 1970); *California Teachers Ass'n v. Newport Mesa Unified School Dist.*, 333 F. Supp. 436, 441-42 (C.D. Calif. 1971). The happenstance of a three-judge court being designated earlier in one case deserving of such a designation as opposed to another equally deserving case should not drive application of the first-filed rule.

In summary, there is no reason in this case to depart from the way the parallel issue was applied in *Perry v. Del Rio*. Whether it is called the dominant jurisdiction rule (in state court) or the first-filed rule (in federal court), the application of the rule is the same.[17]

## III.  AUTHORITY OF SINGLE JUDGE IN THREE-JUDGE COURT CONTEXT

Subsection (b)(3) of 28 U.S.C. § 2284 provides that a single judge "may conduct all proceedings" except the trial, subject to exceptions provide in (b)(3). The (b)(3) exceptions specifically bar a single judge from appointing a master, ordering a reference, or hearing and

---

[17] In light of the discussion in Part II about how *Perry v. Del Rio*'s rules apply in federal court, this brief does not further address the question of whether the *Perry v. Del Rio* rule is one of substantive or procedural law. It seems clear that the ripeness  rule is a substantive rule governing Texas law. *See Perry v. Del Rio*, 66 S.W.3d at 249-51. Thus, a federal court would be required to apply it in cases in which state law rules are directly at issue. *See generally Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).

10

determining issues concerning preliminary and permanent injunctions. The single judge also may not enter a judgment on the merits. Furthermore, any actions of a single judge are subject to review by the full court at any time before final judgment.

The single judge to whom the case is assigned, and a request for a three-judge court is presented, is to immediately notify the chief judge of the circuit. The Court may decline to exercise this duty only if it finds the claims made to be "wholly insubstantial." *LULAC of Texas v. Texas*, 113 F.3d 53, 55-56 (5th Cir. 1997). In the absence of such a determination, requesting the convening of a three-judge court is mandatory. *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 711 (1962).

Courts have added further details to the restrictions on a single judge's authority in the three-judge court context. A single judge may not stay cases in which a three-judge court is required. *Svejkovsky v. Tamm*, 326 F.2d 657, 658 (D.C. Cir. 1963). Similarly, a single judge may not order abstention. *Ryan v. State Bd. of Elections*, 661 F.2d 1130, 1134-35 (7th Cir. 1981). While research has thus far uncovered no specific case authority on this point, the principles underlying these rulings suggest that, in a case requiring a three-judge court, a single judge does not have the authority to transfer venue or consolidate cases. Nor does authority for such actions lie with the chief judge of the circuit. Rather, action on such matters should be undertaken only by a three-judge court, properly convened.

11

Respectfully submitted,

Renea Hicks
State Bar No. 09580400
rhicks@renea-hicks.com
Law Office of Max Renea Hicks
101 West 6th Street
Austin, Texas 78701
(512) 480-8231
(512) 480-9105 FAX


**SCOTT, DOUGLASS & MCCONNICO, L.L.P.**


BY: /s/ Steve McConnico
Steve McConnico
State Bar No. 13450300
smcconnico@scottdoug.com
S. Abraham Kuczaj, III
State Bar No. 24046249
akuczaj@scottdoug.com
Sam Johnson
State Bar No. 10790600
sjohnson@scottdoug.com
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300 – Telephone
(512) 474-0731 – Facsimile

ATTORNEYS FOR PLAINTIFFS EDDIE
RODRIGUEZ, *ET AL.*, TRAVIS COUNTY,
AND CITY OF AUSTIN

12

David Escamilla
Travis County Attorney
State Bar No. 06662300
P.O. Box 1748
Austin, Texas 78767
(512) 854-9416
fax (512) 854-4808

ATTORNEY FOR PLAINTIFF
TRAVIS COUNTY

Karen Kennard
City Attorney
State Bar No. 11280700
P.O. Box 1088
Austin, Texas 78767-1088
(512) 974-2268
fax (512) 974-6490

ATTORNEY FOR PLAINTIFF
CITY OF AUSTIN

13

809793

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2011, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to the following:

**Attorney for Plaintiffs Eddie Rodriguez, *et al.*,**
**Travis County, and City of Austin**
Max Renea Hicks                                               *VIA FAX: 512-480-8231*
Law Office of Max Renea Hicks
101 W. 6th Street, Suite 504
Austin, Texas 78701

**Attorney for Defendants Gov. Rick Perry,**
**Lt. Gov. David Dewhurst, Speaker Joe Straus,**
**Secretary of State Hope Andradé, and**
**the State Of Texas**
David Schenck, Deputy Attorney General          *VIA FAX: 512-936-0545*
for Legal Counsel
209 W 14th Street
Austin, TX  78711

**Attorney for Defendant Chair of the**
**Texas Democratic Party Boyd L. Richie**
Chad W. Dunn                                                  *VIA FAX: 281-580-6362*
4201 FM 1960 West, Suite 530
Houston, TX  77068

**Attorney for Defendant Chair of the**
**Republican Party of Texas Steve Munisteri**
Donna Garcia Davidson                                    *VIA FAX: 877-200-6001*
P.O. Box 12131
Austin, TX 78711-2131

/s/ Steve McConnico
Steve McConnico

14

809793